Kevin P. Roddy, Esq.
WILENTZ, GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
Facsimile:   (732) 726-6686
Email: kroddy@wilentz.com

William W. Palmer, Esq.
(*Pro Hac Vice Counsel*)
PALMER LAW GROUP, PLC
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Facsimile:  (916) 972-0877
Email: wpalmer@palmercorp.com

Attorneys for plaintiff Lisa Salvato

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LISA SALVATO and on behalf of herself and other persons similarly situated,<br><br>     Plaintiff,<br><br>     v.<br><br>STEVEN HARRIS, in his official capacity as ADMINISTRATOR OF THE STATE OF NEW JERSEY,<br><br>     Defendant. | Case No.:  3:21-cv-12706<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF RIPENESS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1) AND 12(b)(6) AND FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 56 AND LOCAL CIVIL RULE 56.1 AS TO ALL COUNTS OF THE FIRST AMENDED COMPLAINT** |

# TABLE OF CONTENTS

**PAGE**

PRELIMINARY STATEMENT ...................................................................1

STATEMENT OF FACTS ...........................................................................6

    A.    Summary ................................................................... 6

    B.    Defendant's Misuse of the UPA ............................................. 11

    C.    The Undisputed Material Facts Show That Defendant Unconstitutionally Seized Plaintiff's Property. ....................... 13

ARGUMENT ............................................................................................ 16

POINT ONE .............................................................................................. 16

THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE THE AMENDED COMPLAINT ALLEGES MULTIPLE CONSTITUTIONAL VIOLATIONS WHICH ARE CONFIRMED BY THE DEFENDANT'S MOTION AND THE UNDISPUTED FACTS. .... 16

    A.    Federal Courts Have Jurisdiction And The Power to Hear Claims Arising Under The United States Constitution............ 16

    B.    The Seizure of Property by a State Official Over Which The State of New Jersey Has No Jurisdiction, Ownership Interest, or Colorable Right -Regardless of Notice to The Owners - Is Unconstitutional. .................................................. 18

    C.    The Amended Complaint Alleges Facts Showing That Defendant Engaged in an Unnoticed Stock Transfer of Plaintiff's Shares. .................................................................. 19

POINT TWO .............................................................................................. 21

SUMMARY JUDGMENT MAY NOT BE GRANTED TO THE DEFENDANT ON PLAINTIFF'S SECOND CLAIM FOR RELIEF BECAUSE PLAINTIFF ESTABLISHES A TAKINGS CLAUSE VIOLATION ...................................................................... 21

i

**TABLE OF CONTENTS (cont'd)**

**PAGE**

A.      Legal Standard For Granting Summary Judgment. ................. 21

B.      Summary Judgment May Not Be Granted on That Claim Because The Administrator Violated The Fifth Amendment To The U.S. Constitution And Actual "Property" Must be Returned to The Plaintiff Stockowner. .................................... 21

C.      The Controller Engaged in an Unauthorized, Unnoticed Stock Transfer Which is Prohibited By Federal And State Securities Laws. ........................................................................ 23

POINT THREE ............................................................ 24

SUMMARY JUDGMENT MAY NOT BE GRANTED TO DEFENDANT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF BECAUSE PLAINTIFF ESTABLISHES A PROCEDURAL DUE PROCESS VIOLATION. ......................................... 24

A.      Defendant Concedes The Plaintiff Received no Constitutional Notice of Any Kind From the Defendant Regarding The Transfer And Sale of Her Shares of Stock. ...... 24

     1.     No Direct Mail Notice to The Plaintiff. .......................... 27

     2.     No Publication Notice Directed to The Plaintiff. .......... 29

     3.     No Website Notice to The Plaintiff. .............................. 30

B.      Plaintiff States Cognizable Claims Upon Which Relief May be Granted. ................................................................. 31

     1.     The State May Not Deem Property as "Abandoned" in Violation of The Constitutional Notice And Due Process Requirements or The Action Constitutes an Unconstitutional "Taking" of Private Property. ............ 31

     2.     The Administrator's Actions do Not Comply With New Jersey's Unclaimed Property Law That Mandates Notices And Due Process. ............................. 34

CONCLUSION ............................................................. 38

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE</u>

**Cases**

*Anderson v. Liberty Lobby, Inc.,*
   477 U.S. 242 (1986) ................................................................................ 21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ................................................................................ 20

*Burgos v. State,*
   222 N.J. 175 (2015) .................................................................................. 8

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) ................................................................................ 21

*Cervantes v. San Diego,*
   5 F. 3d 1273 (9th Cir. 1993) ..................................................................... 31

*Cherokee Nation v. Southern Kansas R. Co.,*
   135 U.S. 641 (1890) ................................................................................ 22

*Concrete Corp. v. Town of Roxbury,*
   442 F.3d 159 (3d Cir. 2006) ..................................................................... 17

*Connecticut Mut. Life Ins. Co. v. Moore,*
   333 U.S. 541 (1947) .................................................................................. 7

*Connecticut v. Doehr,*
   501 U.S. 1 (1991) .................................................................................... 25

*Delaware v. New York,*
   507 U.S. 490 (1993) ............................................................................ 1, 18

*Energy Reserves Group, Inc. v. Kansas Power & Light Co.,*
   459 U.S. 400 (1983) ................................................................................ 35

*Ernst & Ernst v. Hochfelder,*
   425 U.S. 185 (1976) ................................................................................ 23

*Fong v Westly,*
   117 Cal. App. 4th 841 (2004) .............................................................. 32, 34

iii

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Fuentes v. Shevin*,
   407 U.S. 67 (1972) ............................................................... 25, 26

*Garcia-Rubiera v. Fortuno*,
   665 F.3d 261 (1st Cir. 2011) ..................................................... 34

*Harris v. Westly,*
   116 Cal. App. 4th 214 (2004)........................................... 1, 33, 34

*Hishon v. King & Spaulding*,
   467 U.S. 69 (1984) ................................................................... 31

*Hurley v. So. Calif. Edison Co.*,
   183 F.2d 125 (9th Cir. 1950) ..................................................... 19

*Jones v. Flowers*,
   547 U.S. 220 (2006) .............................................. 11, 26, 27, 36

*Kremen v. Cohen*,
   337 F.3d 1024 (9th Cir. 2003) ............................................ 19, 23

*Luessenhop v. Clinton Cnty., New York*,
   466 F.3d 259 (2d Cir. 2006)....................................................... 34

*Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*,
   876 F.3d 481 (3d Cir. 2017)......................................................... 6

*Monongahela Nav. Co. v. United States*,
   148 U.S. 312 (1893) ................................................................... 22

*N. Ga. Finishing v. Di-Chem, Inc.*,
   419 U.S. 601 (1975) ................................................................... 26

*Pennsylvania v. New York*,
   407 U.S. 206 (1972) ..................................................................... 1

*Perez-Alevante v. Gonzales*,
   197 Fed. App'x 191 (3d Cir. 2006).................................... 34, 36

*Ralston v. Bank of Cal.*,
   112 Cal. 208 (1896)................................................................... 20

## TABLE OF AUTHORITIES (cont'd)

**PAGE**

*Regional Rail Reorganization Act Cases*,
  419 U.S. 102 (1974) ................................................................... 22

*Schneider v. Union Oil Co. of Calif.*,
  6 Cal. App. 3d 987 (1970) .................................................... 19, 23

*Standard Oil Co. v. New Jersey*,
  341 U.S. 428 (1951) ..................................................................... 1

*State ex rel. Dep't of Transp. v. Little*,
  100 P.3d 707 (Okla. 2004) ......................................................... 22

*State ex rel. N.W. Elec. Power Co-op., Inc. v. Waggoner*,
  319 S.W. 2d 930 (Mo. Ct. App. 1959) ....................................... 22

*State v. Doyle*,
  735 P.2d 733 (Alaska 1987) ....................................................... 22

*Suever v. Connell*,
  439 F.3d 1142 (9th Cir. 2006) ................................................... 16

*Taylor v. Chiang*,
  2007 WL 1628050 (E.D. Cal. June 1, 2007) ......................... 4, 34

*Taylor v. Westly*,
  402 F.3d 924 (9th Cir. 2005) ............................................. passim

*Taylor v. Westly*,
  488 F.3d 1197 (9th Cir. 2007) ............................................ passim

*Taylor v. Yee*,
  136 S. Ct. 929 (2016) .................................................................. 4

*Texas v. New Jersey*,
  379 U.S. 674 (1965) ............................................................... 1, 18

*U.S.  v. James Daniel Good Real Property*,
  510 U.S. 43 (1993) ..................................................................... 25

*United States Trust Co. of N.Y. v. New Jersey*,
  431 U.S. 1 (1977) ................................................................. 28, 35

# TABLE OF AUTHORITIES (cont'd)

**PAGE**

*United States v. James Daniel Good Real Prop.*,
  510 U.S. 43 (1993) ............................................................... 25, 30

*United States v. Naftalin*,
  441 U.S. 768 (1979) ................................................................... 23

*United States v. Reynolds*,
  397 U.S. 14 (1970) ..................................................................... 22

*Western Union Tele. Co. v. City of Davenport*,
  97 U.S. 369 (1878) ............................................................... 19, 23

*Williamson Cnty Reg'l Planning Comm'n v. Hamilton Bank*,
  473 U.S. 172 (1985) ................................................................... 17

**Statutes**

15 U.S.C. §§ 77a-77bbb.................................................................. 20

15 U.S.C. §§ 78a-78hh.................................................................... 20

28 U.S.C. § 1331 ........................................................................... 16

42 U.S.C. § 1983............................................................................. 4

N.J.S.A. § 46:30B-1 ........................................................................ 1

N.J.S.A. § 46:30B-105.................................................................... 11

N.J.S.A. § 46:30B-63....................................................................... 7

N.J.S.A. § 46:30B-7.................................................................... 3, 11

N.J.S.A. § 46:30B-79....................................................................... 8

N.J.S.A. § 46:30B-80....................................................................... 8

**TABLE OF AUTHORITIES** (cont'd)

**PAGE**

**Rules**

Rule 56(a)................................................................ 21

Rule 56.1 ................................................................ 14

**Other Authorities**

17 C.F.R. § 240.17Ad-17............................................. 14

California Code of Civil Procedure § 1300(c)............................. 33

California Code of Civil Procedure § 1531 ................................. 32

California Code of Civil Procedure § 1541 ................................. 32

California Code of Civil Procedure § 1566 ................................. 32

E. Leamy, ABC Good Morning America , "Not-So-Safe-Deposit Boxes: States Seize Citizens' Property to Balance Their Budgets" (May 12, 2008): http://www.youtube.com/watch?v=ZdHLIq0qHhU ................................. 1

National Public Radio "NPR" "All Things Considered – State Unclaimed Property Laws Under Scrutiny," National Broadcast: http://www.npr.org/templates/story/story.php?storyId=12379040............. 2

S. Lima, Bloomberg Tax, "Killing the Golden Goose: The Declining Health of State Unclaimed Property Programs" (Feb. 2, 2021): https://news.bloombergtax.com/daily-tax-report-state/killing-the-golden-goose-the-declining-health-of-state-unclaimed-property-programs ........... 2

Taylor, Mac, "Unclaimed Property: Rethinking the State's Lost & Found Program, Legislative Analyst's Office (LAO)" (February 10, 2015) at pp. 16-17 found at: http://www.lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf.................................... 37

Yahoo Finance – Berkshire Hathaway stock price quote: http://finance.yahoo.com/quote/BRK-A?ltr=1 (last visited October 3, 2023).................................................................... 32

## PRELIMINARY STATEMENT

This case challenges the actions of Defendant, Steven Harris, in his capacity as New Jersey's Unclaimed Property Administrator ("Administrator"), who seizes privately held stock investments and other private property without statutory or constitutional notice under color of the New Jersey Uniform Disposition of Unclaimed Property Act, N.J.S.A. § 46:30B-1 *et seq.* ("UPA").  Such property includes allegedly dormant savings accounts, uncashed payroll checks, unredeemed customer or vendor credits, unused gift cards or gift certificates, and inactive stock and bond accounts as defined by statute.

The Supreme Court and lower federal courts have already addressed and rejected the very arguments raised in Defendant's instant Motion, ECF No. 56, under identical circumstances.  *See Delaware v. New York*, 507 U.S. 490 (1993); *Pennsylvania v. New York*, 407 U.S. 206 (1972); *Standard Oil Co. v. New Jersey*, 341 U.S. 428, 433-34 (1951); and *Texas v. New Jersey*, 379 U.S. 674, 675-77 (1965).)[1]   The Motion cites no Supreme Court authority whatsoever for the

---

[1] Several articles and media provide a helpful overview and understanding of this "new form of escheat":

E. Leamy, ABC Good Morning America , "Not-So-Safe-Deposit Boxes: States Seize Citizens' Property to Balance Their Budgets" (May 12, 2008): http://www.youtube.com/watch?v=ZdHLIq0qHhU;

proposition that a state government program may arbitrarily seize and sell stock investments with no notice whatsoever to the stockholder like the Plaintiff.

On July 22, 2010, the date when Plaintiff's stock was seized, the market reported a high value of $38,000 as the value of Salvato's forty (40) shares of ALSE stock. Salvato discovered that Defendant sold the shares on February 8, 2013, a date when the value fluctuated from $300 to $500 per share so that the Administrator received a high of $20,000 or a low of $12,000.  Declaration of Lisa Salvato, ECF No. 68 ("Salvato Decl."), ¶ 12. On or about August 5, 2015, Plaintiff discovered for the first time that her 40 shares of Alseres Pharmaceuticals ("ALSE") stock had been transferred to the Administrator without notice to her.  ECF No. 68, ¶ 5.  For years after receiving Plaintiff's claim inquiry, Defendant repeatedly denied that the Administrator ever held Salvato's private property.  *Id.* ¶¶ 4-6.

Throughout the Motion, Defendant concedes that Salvato's property was seized without any constitutional notice to her, so it is unclear at this time the exact date on which the property was seized by Defendant and his privately commissioned

---

National Public Radio "NPR" "All Things Considered – State Unclaimed Property Laws Under Scrutiny," National Broadcast:
http://www.npr.org/templates/story/story.php?storyId=12379040

S. Lima, Bloomberg Tax, "Killing the Golden Goose: The Declining Health of State Unclaimed Property Programs" (Feb. 2, 2021):
https://news.bloombergtax.com/daily-tax-report-state/killing-the-golden-goose-the-declining-health-of-state-unclaimed-property-programs.

"Auditor."  ECF No. 56-4 at 24, 26, 28 & 29; Plaintiff's Corrected Class Action Complaint, ECF No. 3 ("Amended Complaint"), ¶ 21.

Under this scheme, over $4 billion in accounts are deemed to be "lost and unknown," which is required under N.J.S.A. § 46:30B-7 in order for the private property to be eligible to escheat to the State of New Jersey.  Such "lost and unknown" citizens currently include singer George Clinton, actress Meryl Streep, singer Taylor Swift, actor Danny Devito, New Jersey Governor Phil Murphy, and Donald J. Trump.  Critical to the argument that follows is the fact that Plaintiff is well known, pays her taxes, and received no notice, even when she contacted Defendant's agency.  ECF No. 68, ¶ 12.

Tellingly, when the State of New Jersey seeks to locate taxpayers to force them to pay amounts that are due and owing, the Controller and other state agencies are quick to resort to the Department of Motor Vehicles database and other readily available sources of information.  Yet when it comes time to seize property under the UPA, the Administrator is inexplicably unable to locate virtually all of New Jersey's citizenry and numerous persons of global renown and, thus, deems those same property owners "unknown." These same computer databases are then used by the Defendant to verify the identity of the owners and to determine whether they may later reclaim the property under the UPA.  But the same databases are *not* used to convey constitutional notice or to determine whether a citizen meets the threshold

3

definition of being "lost and unknown" or whether he or she has ever resided in this State.

Salvato's Amended Complaint asserts two causes of action based on these illegal and unconstitutional activities: (1) violations of 42 U.S.C. § 1983 arising from violations of the Fourteenth Amendment; and (2) violations of 42 U.S.C. § 1983 arising from violations of the Fifth Amendment.

Tellingly, when the Ninth Circuit reviewed California's Unclaimed Property Law in *Taylor v. Westly*, 488 F.3d 1197 (9th Cir. 2007), it ordered that a preliminary injunction must issue. As Judge Shubb observed when issuing the injunction against California's Controller:

> "… the primary purpose of the UPL is not supposed to be to raise revenue for the state. The Controller's webpage says the law was enacted 'to prevent holders of unclaimed property from using your money and taking it into their business income.' If the purpose of the law is, as the Controller has reportedly said, to reunite owners with their [property, it would] generate little or no revenue at all for the state."

*Taylor v. Chiang*, 2007 WL 1628050, at *4 (E.D. Cal. June 1, 2007).

After conferencing about a petition for writ of certiorari nine times in *Taylor v. Yee*, 136 S. Ct. 929 (2016), on February 29, 2016 (the day after the passing of Justice Anton Scalia, who was presumably the third vote in favor of granting review), Justices Samuel A. Alito, Jr. and Clarence Thomas issued a written opinion directed to California's Controller. These Justices admonished the Controller that "[t]he Due Process Clause requires States to give adequate notice before seizing

private property.  When a State is required to give constitutional notice, it must do so through processes 'reasonably calculated' to reach the interested party - here, the property owner."  *Id.*

Justices Alito and Thomas explained to the Controller that because the seizure of private property is no small thing, notification procedures may not be empty rituals:  "[P]rocess which is a mere gesture is not due process.  Whether the means and methods employed by a State to notify owners of a pending escheat meet the constitutional floor is an important question."  *Id.* (citations omitted).  The Justices noted that, "[i]n recent years, States have shortened the periods during which property must lie dormant before being labeled abandoned and subject to seizure."  *Id.* at 930.  They cited the State of New York, in particular, as an example, and then observed that it recently shortened its dormancy period from as long as 15 years to merely three years:

> This trend - combining shortened escheat periods with minimal notification procedures - raises important due process concerns. As advances in technology make it easier and easier to identify and locate property owners, many States appear to be doing less and less to meet their constitutional obligation to provide adequate notice before escheating private property. Cash-strapped States undoubtedly have a real interest in taking advantage of truly abandoned property to shore up state budgets. But they also have an obligation to return property when its owner can be located. To do that, States must employ notification procedures designed to provide the pre-escheat notice the Constitution requires.

136 S. Ct. at 930.

5

The Justices concluded that "the constitutionality of current state escheat laws is a question that may merit review in a future case." *Id.*  The Third Circuit observes: "[I]n recent years, state escheat laws have come under assault for being exploited to raise revenue rather than to safeguard abandoned property for the benefit of its owners." *Marathon Petroleum Corp. v. Sec'y of Fin. for Delaware*, 876 F.3d 481, 488 (3d Cir. 2017) (citations omitted; internal quotation marks omitted).

Two petitions for writs of certiorari are now pending before the Supreme Court:  *Hashim v. Cohen*, No. 23-195, filed on August 29, 2023, and *Johnson v. Cohen*, No. 23-255, filed on September 12, 2023.  This proposed class action is cited as a "Related Case" in both petitions.

## STATEMENT OF FACTS

### A.    Summary

In an effort to raise funds for use by the State of New Jersey, the Administrator misuses the UPA to illegally confiscate private property from Plaintiff and the members of the Class.  ECF No. 3, ¶ 12.  At multiple points in the Motion, Defendant notes that Plaintiff styled her action as an "as applied" challenge to Defendant's application of statutory scheme, ECF No. 3, ¶ 11, rather than a "facial challenge" to the Constitutionality of the statutory scheme.  In response, Plaintiff will seek leave to amend her pleadings to add new Plaintiffs Jaime Borquez and Christine Kydd, to

add the "facial challenge" allegation, and to correct any other perceived pleading defects.

The UPA is in theory (but not in practice) a statutory scheme designed to reunite lost property with its rightful owner. *See Connecticut Mut. Life Ins. Co. v. Moore*, 333 U.S. 541, 547 (1947).  But this Court and the public are never told how the salutary purpose of the UPA – to reunite lost property with its rightful owner - can possibly occur when the majority of the property seizures take place without any notice whatsoever to the private property owners.  ECF No. 3, ¶ 9.  Along with the failure to provide notice, Defendant also fails to publish notice or to publicly list possession of the property on the State of New Jersey's Internet website.  *Id*.  The result is that similarly situated citizens, like Plaintiff, are forced into a protracted game of hide-and-seek to discover the whereabouts of their property.  In Plaintiff's case, this process took nine (9) years, and her situation is alleged to be typical of the other injured citizens.  ECF No. 3, ¶ 18; ECF No. 68,  ¶ 5.

Used properly, lost or abandoned property is delivered to the Administrator, who is charged with holding the property in a custodial capacity for "safekeeping." N.J.S.A. § 46:30B-63.  The property never becomes the property of the State.  *Id*. The Administrator is required to attempt to locate the rightful owner by sending notice by mail to the owner's last-known address and by publishing information about unclaimed property (including the apparent owner's name) in newspapers of

general circulation reasonably calculated to reach the rightful owner.  The rightful owner then has the opportunity to claim his or her property before it is sold.  ECF No. 3, ¶ 9.  When the rightful owner is located, the property is to be returned to the owner, with interest.  N.J.S.A. § 46:30B-79 & -80.

The UPA assigns the Administrator the duty to hold the property in trust as the trustee for the rightful owners but allows the State to make use of the property until the rightful owners are located and claim their property.  *Burgos v. State*, 222 N.J. 175, 183 (2015).  Provided that the owners remain missing and do not claim the property, the State may, in theory, "use" the property forever.  The process alleged by Plaintiff in her Amended Complaint, as devised by the State and confirmed in the Motion, assures that property owners and their property remain lost forever and un-reunited.  Thus, under the scheme concocted by  Defendant and State officials, the seized private property inures permanently to the benefit of the State and is never returned.

Plaintiff alleges and shows this Court that the Administrator has turned the UPA on its head.  ECF No. 68, ¶¶ 5, 6, 10, 11, 13 & 14.  For many years, Defendant has disregarded the rightful owners of the property - the principal beneficiaries of the UPA - and uses the UPA to maximize the funds available for use by the State.  The Administrator enlists privately commissioned private "auditors" to seize private property from unsuspecting private citizens who were not "lost" or "unknown," who

have taken no action to "abandon" their property, and whose property was, in many instances, outside the jurisdiction of the State of New Jersey.  These private auditors receive a percentage (typically 11%) of every piece of property that they seize on behalf of Defendant.

Having seized Plaintiff's and Class members' private property, the Administrator ensures that few of the victims realize who has seized their investments, contents of safe deposit boxes, savings accounts, etc., and that those victims who did would be able to recover only a fraction of the value of their property from the State, as this case amply demonstrates.

Defendant spends many pages in the motion explaining how Plaintiff's stock collapsed in value and was then sold while in his "custody," reasoning that Plaintiff is not injured because he essentially does her and other consumers a favor by selling off their stock investments for them.  ECF No. 56-4 at 6-8; *see also* ECF No. 3, ¶ 21.  Plaintiff provides public documentation that the stock in question had a value of $28,000.00 as of February 5, 2013.  ECF No. 68, ¶ 12.  Defendant's own office openly questioned the sales price of the stock:  "I am not sure why they would have been liquidated at $.06 but the closing price is $700."  ECF No. 68, ¶¶ 12-13.

The Motion is largely silent as to dates and makes no apologies for the fact that it has taken nearly a decade and extensive litigation to reach this point in Defendant's "claim process."  Defendant freely admits that he does not list property

on the Administrator's website and the agency cannot locate the owner's property on its website, even when specifically asked to do so: "Because Salvato's property while in Defendant's custody has always been worth no more than $8.40, no mailing, newspaper, website, or other notice was required under New Jersey law." ECF No. 56-4 at 32. This Court will find no Supreme Court constitutional authority supporting the proportion that a state may create an artificial threshold for application of the constitutional notice and due process, whether it is $100 or $1,000. Thus, Plaintiff shows this Court that a statutory scheme with the benign purpose of protecting property rights and reuniting people with lost property is distorted into an alibi for a state official bent on seizing private property for unauthorized use as a revenue stream. ECF No. 3, ¶ 11.

In this case, Plaintiff seeks to represent private property owners and stockholders with federally protected stock rights and property owners living in New Jersey, the United States, and other countries. Plaintiff alleges that the Administrator seized stock investments and private property (like safe deposit box contents, life insurance proceeds, savings and retirement accounts, etc.) from Plaintiff and Class members, acting under color of the UPA, in violation of the UPA's own requirements, and in violation of the owners' rights guaranteed by the United States and New Jersey Constitutions, federal and state securities laws and, most importantly, the Fifth and Fourteenth Amendments of the United States Constitution.

10

The Amended Complaint alleges that no proper constitutional notice is provided of any kind, regardless of value and Defendant's Motion confirms these facts.

## B.    Defendant's Misuse of the UPA

The UPA defines "unclaimed property" as property that had been "abandoned" for at least three (3) years.  Stock is determined to be abandoned when, for a specific period of time, (1) the shareholder has not cashed a dividend check or other sum, or corresponded in writing with the business, or otherwise evidenced an interest in the investment; *and* (2) the business does not know the location of the owner. N.J.S.A. § 46:30B-7.  *See Jones v. Flowers*, 547 U.S. 220, 227 (2006) (citing *Plemons v. Gale*, 396 F.3d 569, 577-78 (4th Cir. 2005)).

The Administrator hires contractors to "audit" corporations and other business entities ("holders" in the parlance of the UPA) to increase the amount of "unclaimed" property that is seized.  The Amended Complaint alleges that the conduct of the "auditors," acting on behalf of the Administrator, is unconstitutional and violates state contracting laws.  ECF No. 3, ¶ 28.  The auditors receive "sole source" contracts and are paid on commission; in other words, their fees are computed as a percentage and paid directly from the private property they take from the holders.  Armed with the State's right to impose fines on holders that refuse to turn over property to the Administrator, *see* N.J.S.A. § 46:30B-105, and the corresponding right to grant immunity to holders who cooperate by turning over stock to the Administrator, the

11

Administrator's agents increase the amount of "unclaimed" property provided to the Administrator.  Because the auditors are compensated on a commission-only basis, their only incentive is to seize as much property as possible, with no incentive whatsoever to ensure that the property they were seizing is actually within the scope of the UPA.  ECF No. 3, ¶ 21.

Far from passively "receiving" property from holders, as Defendant would have this Court believe, the Administrator aggressively and actively coerces Holders to deliver *more* "unclaimed" property to the Administrator - including property that is not susceptible to escheat under the UPA.  The Administrator further interferes with owners' rights to make claims for the return of their property by depriving the rightful owners of due process of law before their property was seized.  ECF No. 3, ¶ 15.

Under the unnoticed process outlined in the Amended Complaint and the Motion, a property owner is unable to protect herself against this process, as Judge Shubb found in *Taylor v. Chiang*, 2007 WL 1628050 (E.D. Cal. June 1, 2007).

The Amended Complaint alleges, and the Motion concedes, that the Administrator seizes and sells Plaintiff's and Class Members' stock without providing direct mail notice, the opportunity to confirm ownership of the property, and publication notice, including the name of the owner, and the private property is not listed on the Defendant's website, all as provided in the UPA.  ECF No. 3, ¶ 21.

In support of the Motion, one would expect the Defendant to produce the notices to Plaintiff, such as the *Mullane*-style[2] publication notice with Plaintiff's and Class Members' names, last known addresses, and property description. The Defendant could show the Court and the Plaintiff the constitutional publication notices, even though the Defendant concedes that no such notices admittedly exist.

Thus, these steps of maximizing the amount of property seized under the UPA and minimizing the number of owners who know that the Defendant had seized their property and may claim it back increase the amount of funds available for "use" by the State. The Administrator has seized billions of dollars' worth of "unclaimed property" from thousands of "known" owners, which has been put to permanent "use" by the State without the necessity of raising taxes. Defendant is absolutely required to check public registries to determine if owners are "unknown" before taking their property as "unknown."

**C.    The Undisputed Material Facts Show That Defendant Unconstitutionally Seized Plaintiff's Property.**

No provision of the UPA provides any basis whatsoever for the State of New Jersey to claim an interest in Salvato's private stock or any other property not yet seized. Nevertheless, the Administrator seized some (but not all) of Plaintiff's private property and stockholdings in or about 2010, though she is very well known

---

[2] *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306 (1950).

to the State, which Defendant admits was without notice and without her knowledge. This point is conceded in the Motion, which acknowledges that Plaintiff (and other citizens) spend years navigating Defendants' unnoticed "claim process."

The record in this case shows that Plaintiff purchased 200 shares of Boston Life Sciences ("BLSI") stock on or about December 28, 2001, conjointly with her mother, Viola Salvato.  Defendant's Rule 56.1 Statement of Undisputed Material Facts, ECF No. 56-1, ¶ 1.  Viola Salvato passed away on or about July 10, 2002, and Plaintiff processed the paperwork to transfer the stock solely into her name.  ECF No. 68, ¶ 3.  Eight years later, Plaintiff learned that the stock had been "escheated" to the Administrator's office in 2010 without any notice to Plaintiff, ECF No. 56-1, ¶ 13; however, for more than nine (9) years, Defendant's office was unable to locate the missing property.  ECF No. 56-4 at 5-6 ("On August 27, 2015, the UPA sent Salvato an "NF1" letter, indicating that, after a search of its records, no property belonging to Salvato had been identified.")  Plaintiff continued to receive investor e-mail messages from the holder as late as May 28, 2021, eleven (11) years *after* the stock was purportedly "escheated."  ECF No. 56-4 at 29; ECF No. 3, ¶ 18.  Holders are required to perform due diligence prior to escheating stock pursuant to SEC regulations, 17 C.F.R. § 240.17Ad-17, and the UPA.  Thus, with Plaintiff still receiving stock reports, the owner and her stock did not meet the threshold definition for application of the UPA.

On or about September 27, 2019, Plaintiff received a telephone call from Defendant's office asking to speak with Viola Salvato.   ECF No. 68, ¶ 18. Defendant's office represented to Plaintiff that they indeed had the escheated stock but stated that it was only valued at $3.00 per share.  ECF No. 68, ¶ 20.  Plaintiff is now advised that all forty (40) shares are worth "around $3.00."  ECF No. 3, ¶ 20; ECF No. 56-1, ¶¶ 16-17.

For years, Defendant repeatedly denied that the agency had Plaintiff's property.  ECF No. 56-1, ¶ 22.  On May 19, 2020, the stock market reflected a high value of $60,000 as the value of Plaintiff's forty (40) shares of ALSE stock.  ECF No. 68, ¶ 11.  Plaintiff discovered that Defendant sold the shares on February 8, 2013, a day when the stock's value fluctuated between $300 and $500 per share so the Administrator received a high of $20,000 or a low of $12,000 according to stock prices published on the MarketWatch website.  ECF No. 3, ¶ 21; ECF No. 68 ¶ 14; ECF No. 56-1, ¶ 29.  If this was indeed the Defendant's belief, then Defendant was required to provide notice, even under Defendant's interpretation of his Notice obligations under the UPA, because the property was worth more than $8.40.

In response to Plaintiff's written inquiry, Defendant stated that it does not have the money from the unauthorized ALSE stock transfer and the Defendant's unconstitutional, unnoticed sale of the forty (40) shares of ALSE stock.  ECF No. 56-1, ¶ 22.  Plaintiff did not receive this information from Defendant, but only

15

learned it after she filed a complaint with the U.S. Securities & Exchange Commission ("SEC") against the transfer company, Continental Transfer.  ECF No. 3, ¶ 22; ECF No. 68, ¶ 11.

## ARGUMENT

### POINT ONE

**THIS COURT HAS SUBJECT MATTER JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE THE AMENDED COMPLAINT ALLEGES MULTIPLE CONSTITUTIONAL VIOLATIONS WHICH ARE CONFIRMED BY THE DEFENDANT'S MOTION AND THE UNDISPUTED FACTS.**

**A.   Federal Courts Have Jurisdiction And The Power to Hear Claims Arising Under The United States Constitution.**

Starting at page 10 of ECF No. 56-4, Defendant argues that this Court lacks subject matter jurisdiction over Plaintiff's claims that "are not ripe."  But the starting point for a proper analysis of this case is the acknowledgment that the federal courts have the full power and jurisdiction to hear this case.  It is axiomatic that federal courts have the jurisdiction and the power to adjudicate matters arising under the United States Constitution.  U.S. Const. Art. III; 28 U.S.C. § 1331.

In *Suever v. Connell*, 439 F.3d 1142 (9th Cir. 2006), the Ninth Circuit reviewed nearly identical allegations and held:

> "*The amended complaint alleges types of harm that, if proven, would amount to "ongoing violation[s] of federal law": including the Controller's practices of publishing constitutionally inadequate notice for property to be escheated, seizing assets that are ineligible for escheat, and misplacing escheated property so that it cannot be*

16

> ***returned to its owner***. The complaint requests prospective relief to
> remedy these ongoing violations: including an injunction to require the
> Controller to publish constitutionally adequate notice, to refrain from
> seizing property ineligible for escheat, and to undertake an accounting
> of funds illegally held within the State's escheat system. *See Taylor,*
> 402 F.3d at 935-36."

439 F.3d at 1148 (emphasis added).  These are precisely the allegations made by

Salvato in her Amended Complaint.

On July 13, 2023, this Court issued an Order (ECF No. 61) and an Opinion

(ECF No. 60) in this case, holding that Plaintiff's claims were unripe and that she

must first engage in Defendant's "claim process."  ECF No. 60 at 2 (citing *Concrete*

*Corp. v. Town of Roxbury*, 442 F.3d 159, 168 (3d Cir. 2006), and *Williamson Cnty*

*Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985)).  Plaintiff filed this

action on behalf of a Class of injured citizens, some of whom admittedly received

no notice.   In order to cure this problem, Plaintiff will seek injunctive relief

compelling Defendant to convey constitutional notice to the injured property

owners.

In *Standard Oil Co. v. New Jersey*, 341 U.S. 428 (1951), the Supreme Court

held that a state may use escheat powers to take custody of presumably abandoned

stock investments, provided that it strictly complies with notice and due process

requirements.  *Id*. at 433-34.  This point is lost on the Defendant and certain of the

other states which have adopted "the new form of escheatment."   *See Taylor v.*

*Westly,* 402 F.3d 924 (9th Cir. 2005), and *Suever v. Connell,* 439 F.3d 1142 (9th Cir.

2006) (rejecting the same arguments advanced in the Motion).  The Supreme Court states, conversely, that if the guidelines are not followed, and notice is not provided, then the actions of the State would constitute violations of the Takings Clause found in the Fifth Amendment, the due process clause of the Fourteenth Amendment, and impairment of the Contract Clause found in Article I, § 10, ¶ 1 of the U.S. Constitution.  *Standard Oil,* 341 U.S. at 436 (state's power is "subject to constitutional limitations").

**B.   The Seizure of Property by a State Official Over Which The State of New Jersey Has No Jurisdiction, Ownership Interest, or Colorable Right -Regardless of Notice to The Owners - Is Unconstitutional.**

Plaintiff alleges that the Defendant seizes stock and property from citizens of other states and countries.  The tests for whether property may escheat to the State of New Jersey are extremely important because they are used to resolve competing claims for property under the escheat laws of different states.  *See Texas v. New Jersey*, 379 U.S. 674 (1965); *Delaware v. New York*, 507 U.S. 490 (1993).  For example, if a holder domiciled in Delaware identifies property unclaimed by a person whose last known address is in Texas, the holder must be able to determine which state (Delaware or Texas) has the superior claim to the unclaimed property. If not for these tests, then every state in the union could potentially make a claim for every share of stock held by any individual worldwide.  This result would be chaotic and unconstitutional and it would put the onus on every shareholder worldwide to

18

take affirmative action to comply with the escheat laws of every state or risk seizure of his property by every single state.  This absurd result is the one seemingly urged by the Defendant in the Motion.

## C.   The Amended Complaint Alleges Facts Showing That Defendant Engaged in an Unnoticed Stock Transfer of Plaintiff's Shares.

The property seized from the Plaintiff was stock.  The law in the United States is that stock transfers must be noticed and authorized, and the investor is absolutely entitled to remain secure in his investments.  The time-tested rulings of the Supreme Court that address mishandled and unauthorized transfers hold that the unauthorized transfer of stock violates the fundamental rights of the shareholders:

> "The great principle that no one can be deprived of his property without his assent, except by the processes of law, requires in the cases mentioned, that the property wrongfully transferred or stolen should be restored to its rightful owner. The maintenance of that principle is essential to the peace and safety of society, and the insecurity which would follow any departure from it would cause far greater injury than any which can fall, in cases of unlawful appropriation of property, upon those who have been misled and defrauded."

(*Western Union Tele. Co. v. City of Davenport*, 97 U.S. 369, 372 (1878); *Hurley v. So. Calif. Edison Co*., 183 F.2d 125, 130-31 (9th Cir. 1950); *see also Schneider v. Union Oil Co. of Calif.*, 6 Cal. App. 3d 987 (1970); *Kremen v. Cohen*, 337 F.3d 1024, 1035 (9th Cir. 2003) (citing *Schneider* for the proposition that a corporation is liable when it "gives away someone's shares"); *Ralston v. Bank of Cal*., 112 Cal.

208, 213 (1896).  This basic rule of law applies to the facts of this case and requires that the shareholder's rights must be restored.

Defendant's misapplication of the UPA interferes with shareholders' carefully drawn and federally protected stock rights under the Securities Act of 1933, 15 U.S.C. §§ 77a-77bbb, and the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78a-78hh (hereinafter the "1933 Act" and the "1934 Act").   Thus, the Administrator's act of seizing publicly traded stocks, without regard to due process, is at direct odds and conflicts with these federal laws that are specifically designed to protect members of the public, including Plaintiff and her stock investments.

In her Amended Complaint, ECF No. 3, Plaintiff alleges seizure of property in violation of fundamental rights protected by the United States Constitution.   "A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable interference that [a] defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  These rights include the right to just compensation for property taken for public use, guaranteed under the Fifth Amendment, and the ongoing right to due process of law, guaranteed under the Fifth and Fourteenth Amendments.  Plaintiff admittedly has other property that may be seized and sold without notice under the unconstitutional process administered by the Defendant.

20

## POINT TWO

**SUMMARY JUDGMENT MAY NOT BE GRANTED TO THE DEFENDANT ON PLAINTIFF'S SECOND CLAIM FOR RELIEF BECAUSE PLAINTIFF ESTABLISHES A TAKINGS CLAUSE VIOLATION.**

### A.    Legal Standard For Granting Summary Judgment.

Under Rule 56(a), a party may move for summary judgment by identifying each claim or defense on which summary judgment is sought. The moving party must demonstrate that there exists no dispute as to any genuine issue of material fact and that they are entitled to summary judgment as a matter of law. Thereon, the court would provide the reasoning for granting or denying the motion.

Summary judgment is only appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  The moving party bears the initial burden of establishing there is no genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In this case, not only issues of fact but the Motion fails to address all claims.

### B.    Summary Judgment May Not Be Granted on That Claim Because The Administrator Violated The Fifth Amendment To The U.S. Constitution And Actual "Property" Must be Returned to The Plaintiff Stockowner.

First, under the just compensation requirement of the Fifth Amendment, the government must establish the existence of a "'reasonable, certain and adequate provision for obtaining compensation'" at "the time of [a] taking." *Regional Rail*

*Reorganization Act Cases*, 419 U.S. 102, 124-25 (1974) (quoting *Cherokee Nation v. Southern Kansas R. Co.*, 135 U.S. 641, 659 (1890)).  In this case, the UPA scheme offers no compensation at all and is squarely inconsistent with the commands of the Fifth Amendment.   The Administrator's actions are contrary to fundamental principles of law announced in a government official seizing private property for public use cannot determine the value of the property seized.  *Monongahela Nav. Co. v. United States*, 148 U.S. 312, 327-28 (1893).

Second, under a Fifth Amendment "Takings Clause" analysis, "…the owner is to be put in the same position monetarily as he would have occupied if his property had not been taken." *United States v. Reynolds*, 397 U.S. 14, 16 (1970).  Likewise, "the term just compensation implies full indemnification to the owner for the property taken.  In other words, the property owner should be placed as fully as possible in the same position as he was in prior to the taking of the property." *State v. Doyle*, 735 P.2d 733, 736 (Alaska 1987); *State ex rel. Dep't of Transp. v. Little*, 100 P.3d 707, 718 (Okla. 2004); *State ex rel. N.W. Elec. Power Co-op., Inc. v. Waggoner*, 319 S.W. 2d 930, 934 (Mo. Ct. App. 1959).

Third, the Administrator, which holds over $4 billion, exists for the purpose of paying claims. This fund is private – the Administrator is the trustee – *see*, *e.g*., *Taylor*, 402 F.3d at 931 –   and the authorizing statute explicitly authorizes the

Administrator to use the funds to pay claims of owners of the property – people just like the Plaintiff and the members of the Class.

**C.    The Controller Engaged in an Unauthorized, Unnoticed Stock Transfer Which is Prohibited By Federal And State Securities Laws.**

The Plaintiff's securities in question are subject to extensive federal regulation under the 1933 Act and the 1934 Act.  These statutes are designed "to protect investors," to provide them "with full disclosure of material information," and "to promote ethical standards of honesty and fair dealing," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976), not to allow states to appropriate the property of unwary investors without adequate notice or disclosures.  *See United States v. Naftalin*, 441 U.S. 768, 775 (1979) (observing that the securities laws were meant "to restore the confidence" of investors that their property would be secure).  Unauthorized stock transfers are absolutely prohibited.  *See Western Union Tele. Co.*, 97 U.S. at 372; *Schneider*, 6 Cal. App. 3d 987; *Kremen*, 337 F. 3d at 1035.  The Administrator's actions under the UPL, as alleged in this case, invariably frustrate the federal statutory purposes and undermine investor confidence in the security of their property.

### POINT THREE

**SUMMARY JUDGMENT MAY NOT BE GRANTED TO DEFENDANT ON PLAINTIFF'S FIRST CLAIM FOR RELIEF BECAUSE PLAINTIFF ESTABLISHES A PROCEDURAL DUE PROCESS VIOLATION.**

**A.    Defendant Concedes The Plaintiff Received no Constitutional Notice of Any Kind From the Defendant Regarding The Transfer And Sale of Her Shares of Stock.**

In *Mullane*, 339 U.S. 306, the Supreme Court held that notice by newspaper publication was insufficient with respect to known present beneficiaries of a trust and did not satisfy due process.  The Court observed that the "elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the ***pendency*** of the action and afford them an opportunity to present their objections" before they are deprived of property.  *Id.* at 313 (emphasis added).  "[P]rocess which is a mere gesture is not due process," but rather the "means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."  *Id.* at 315.  The Ninth Circuit agrees, as set forth in *Taylor,* 402 F.3d 924, and *Suever,* 439 F.3d 1142. Plaintiff's Statement of Material Facts, ECF No. 67, shows that Defendant's conduct falls far outside of the standards of *Mullane* because in this case the Administrator provided no notice or due process at all.

The Motion candidly admits that when the Administrator arbitrarily determines property falls below a certain arbitrary threshold, then no notice is

provided to the owner at all.  A safe deposit box with a proper will and life insurance policy would receive no notice, once it falls below the $100 threshold, even if it rises in value later; dividends and royalty payments over a period of years receives no notice, etc.

The Supreme Court's teaching is that "[t]he right to prior notice"— **before** the State seizes or appropriates property - "is central to the Constitution's command of due process."  *U.S.  v. James Daniel Good Real Property*, 510 U.S. 43, 53 (1993). "The purpose of this requirement is not only to ensure abstract fair play to the individual.  Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment - to minimize substantively unfair or mistaken deprivations of property… ." *Fuentes v. Shevin*, 407 U.S. 67, 80–81 (1972).  In *Fuentes*, the Supreme Court held that the loss of kitchen appliances and household furniture was significant enough to warrant a pre-deprivation hearing.  But in this case there was no such notice to Plaintiff and Defendant concedes no notice of any kind is created and conveyed to property owners.

In *Connecticut v. Doehr*, 501 U.S. 1 (1991), the Supreme Court held that a state statute authorizing prejudgment attachment of real estate without prior notice or hearing was unconstitutional, in the absence of extraordinary circumstances, even though the attachment did not interfere with the owner's use or possession and did not affect, as a general matter, rentals from existing leaseholds.  "[E]ven the

temporary or partial impairments to property rights that such encumbrances entail are sufficient to merit due process protection." *Id.* at 12; *see also Fuentes*, 407 U.S. at 86 ("The Fourteenth Amendment draws no bright lines around three-day, 10-day or 50-day deprivations of property.  Any significant taking of property by the State is within the purview of the Due Process Clause."); *N. Ga. Finishing v. Di-Chem, Inc.*, 419 U.S. 601, 606 (1975) (state garnishment statute subject to constitutional due process where plaintiff's property "was impounded").

And in *Jones*, 547 U.S. 220, the Supreme Court reaffirmed that "**[b]efore** a state may take property and sell it for unpaid taxes, the Due Process Clause of the Fourteenth Amendment requires the government to provide the owner 'notice and opportunity for hearing appropriate to the nature of the case.'" *Jones*, 547 U.S. at 223 (emphasis added; quoting *Mullane*, 339 U.S. at 313).  The Supreme Court held "that when mailed notice of a tax sale is returned unclaimed, the State must take ***additional reasonable steps*** to attempt to provide notice to the property owner before selling his property, if it is practicable to do so." *Id.* at 225 (emphasis added).  In *Jones*, the Supreme Court reasoned that a state may not rely solely on mailed notice "when the government learns its attempt at notice has failed." *Id.* at 227.  The Supreme Court concluded:

> There is no reason to suppose that the State will ever be less than fully zealous in its efforts to secure the tax revenue it needs.  The same cannot be said for the State's efforts to ensure that its citizens receive proper notice before the State takes action against them.

*Id.* at 239.

In *Jones*, 547 U.S. at 227, the Supreme Court cited the Fourth Circuit's decision in *Plemons*, which observed that "as most cases addressing this situation recognize, it is, at the very least, reasonable to require examination (or reexamination) of ***all available public records*** when initial mailings have been promptly returned as undeliverable."   396 F.3d at 577 (emphasis added). "Extraordinary efforts typically describe searches *beyond* the public record, not searches *of* the public record." *Id*. (internal quotation marks and citation omitted and emphasis in original).

This case demonstrates that New Jersey's meager attempts at notice under the UPA statutory scheme have predictably failed.   The Motion freely admits the following material facts, ECF No. 56-4 at 24-38:

### 1.    No Direct Mail Notice to The Plaintiff.

The results of this fatally flawed system applied to the citizen in this case speak for themselves.  The ostensible statutory purpose of the UPA program is to locate and return private property to "unknown" owners, and not to declare "known" citizens in foreign countries to be "unknown" simply for purposes of seizing their property for use by the State.  New Jersey's procedures have hardly produced "notice reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 313.  Indeed, the opposite is true.

Further, where (as here) the government's own fiscal self-interest is involved, ***the requirements of due process must be even more stringent***.  The Supreme Court has warned that the government's financial interest, as well the financial interest of the private auditors the State has incentivized to administer its scheme, creates the danger of self-dealing that raises constitutional red flags.  The Supreme Court has long expressed constitutional "concern with governmental self-interest" when "the State's self-interest is at stake.'"  *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26 (1977)).

Four separate panels of the Ninth Circuit held that the application of this form of Unclaimed Property Law described herein is unconstitutional.  *See Taylor,* 402 F.3d 924; *Suever,* 439 F.3d 1142; *Taylor v. Westly,* 488 F.3d 1197 (9th Cir. 2007).  As set forth above, two Justices of the Supreme Court admonished the California Controller on facts identical to those alleged in this case.

The Ninth Circuit opined that the Controller was required to notify property owners of the impending seizure of their property ***prior* *to*** the seizure, in a manner reasonably calculated under all the circumstances to apprise them of that impending seizure and afford them an opportunity to object: "[b]efore the government may

disturb a person's ownership of his property, 'due process requires the government to provide notice reasonably calculated, under all the circumstances, to apprise the interested party of the pendency of the action and afford him an opportunity to present his objections.'" *Taylor,* 488 F.3d at 1201 (citation omitted).  The Ninth Circuit held that the Controller's mailings "[did] not respond to the requirement that notice be given before an individual's control of his property is disturbed" (*i.e.*, escheated).  *Id.*; *see also Suever,* 439 F.3d at 1148 (noting alleged types of harm alleged that, if proven, would amount to "ongoing violation[s] of federal law").

### 2.     No Publication Notice Directed to The Plaintiff.

In *Taylor,* 488 F.3d 1197, the Ninth Circuit stated that "California cites no authority for the proposition that due process is satisfied by a newspaper advertisement saying that a person concerned about his property can check a website to see whether he has already been (or soon will be) deprived of it."  488 F.3d at 1201.  The Ninth Circuit noted the danger of "the permanent deprivation of [Petitioners'] property subsequent to California's sale of that property, which - pursuant to California's policy of ***immediately*** selling property after escheat - would frequently occur even if plaintiffs were diligent about monitoring their property." *Id.* at 1200 (emphasis in original).  In this case, the Administrator does not even provide an advertisement.

### 3. No Website Notice to The Plaintiff.

Defendant's reliance on its unclaimed property website also fails for three reasons. <u>First</u>, the website offers only ***post-deprivation*** notice ***after*** the State has already seized the property. This is unconstitutionally inadequate. *See United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 54 (1993) ("All that the seizure left [the property owner], by the Government's own submission, was the right to bring a claim for the return of title at some unscheduled future hearing"). Similarly, in *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791 (1983), the Supreme Court held that a "party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation" to provide meaningful pre-deprivation notice. *Id.* at 799.

Second, Defendant's website does not provide meaningful notice. Property owners who have received no prior notice that their property has been seized would have no reason to look at the State of New Jersey website to try to identify their appropriated property. In *Mullane,* the Supreme Court held that newspaper advertisements are not constitutionally adequate (except in special circumstances) because "[c]hance alone" brings a person's attention to "an advertisement in small type inserted in the back pages of a newspaper." 339 U.S. at 315. The same is true of the Defendant's website and this Court should follow the Ninth Circuit's analysis in the *Taylor* and *Suever* decisions cited above.

Third, the citizen who resides in another state or country would have no reason to inspect a "searchable" website in another state, like New Jersey or country for her property.

**B.     Plaintiff States Cognizable Claims Upon Which Relief May be Granted.**

Plaintiff alleges multiple claims against the Administrator and should be afforded the opportunity to prove the allegations. *See Hishon v. King & Spaulding*, 467 U.S. 69 (1984); *Cervantes v. San Diego*, 5 F. 3d 1273, 1274 (9th Cir. 1993).

**1.     The State May Not Deem Property as "Abandoned" in Violation of The Constitutional Notice And Due Process Requirements or The Action Constitutes an Unconstitutional "Taking" of Private Property.**

Starting at page 26 of the Motion, ECF No. 56-4, the Administrator embarks on a discussion of case law that has nothing whatsoever to do with "escheatment" but applies mineral lapse statutes that require periodic filings by the owner in order to preserve the right to access the minerals.  Without the filings, the mineral rights revert back to the government.  This case law has been used to confuse courts that reviewed identical misconduct.

California's Controller convinced its state courts to adopt this distorted "mineral rights" reasoning.  The California courts thus immunized the Controller from operation of the United States Constitution while denying state-law relief from California's unconstitutional Unclaimed Property Law.

For example, in *Fong v Westly,* 117 Cal. App. 4th 841 (2004), which is cited by Defendant, ECF No. 56-4 at 26, the plaintiff shareholders challenged a decision from the Sacramento County Superior Court, which entered judgment in favor of the California Controller in an action seeking monetary and equitable relief after shares of their Berkshire Hathaway stock were seized and sold without notice. *Id.* at 846. The injured shareholders filed a claim for the money left from the unnoticed sale of their stock investment, which had been sold at a price of $7,082 per share. *Id.* at 847. Currently, those same shares of Berkshire Hathaway stock are valued at $521,919.00 per share.[3]  The shareholders then filed an action against the Controller alleging constitutional violations.  After judgment was entered on a motion *in limine* in favor of the Controller based on "statutory immunity," the owners sought review.

In affirming the trial court's decision, the California Court of Appeal determined that the Controller was ***not*** required to provide constitutional notice or to even comply with the mandatory notice provisions found in California Code of Civil Procedure § 1531 and is immune from liability under § 1566 because the owners' claims arose primarily from the Controller's sale of their escheated property. 117 Cal. App. 4th at 851-54.  Because the injured shareholders in that case had already recovered the proceeds from the unnoticed sale of their stock under § 1541,

---

[3]   *See* Yahoo Finance – Berkshire Hathaway stock price quote: http://finance.yahoo.com/quote/BRK-A?ltr=1 (last visited October 3, 2023).

the appellate court reasoned that the owners had received the full amount allowed under the law from the unnoticed seizures and sale.  *Id*. at 852-54.

The appellate court noted that the escheat did not amount to an unconstitutional taking because the State of California did not acquire actual title to the stock under the UPL.  In its decision, the appellate court did not consider *Mullane* or the Fifth and Fourteenth Amendments to the U.S. Constitution.  Or, as to this last point, § 1300(c) [Definitions] of the California's UPL which clearly states:

> "'Escheat,' unless specifically qualified, means the ***vesting in the state of title to property*** the whereabouts of whose owner is unknown or whose owner is unknown or which a known owner has refused to accept, whether by judicial determination or by operation of law, subject to the right of claimants to appear and claim the escheated property or any portion thereof.  When used in reference to the law of another state, 'escheat' includes the transfer to the state of the right to the custody of such property."

Cal. Code Civ. Proc. § 1300(c) (emphasis added).

In a related case, *Harris v. Westly,* 116 Cal. App. 4th 214 (2004), which is not cited by Defendant, the plaintiff stockholders were employees who were owed stock in their employee stock purchase plan when their company merged with another corporation called GTE.  These shareholders brought a class action against the Controller, alleging that he had a statutory obligation under the Unclaimed Property Law to notify them prior to taking and selling their stock.  *Id.* at 218.  The lower court granted the Controller's motion for judgment on the pleadings and the stockholders appealed.  Once again, the appellate court reasoned that the unnoticed

seizure by commissioned state-employed private "auditors" and the subsequent unnoticed sale of private property to create revenue for the State's general fund is neither a violation of the explicit language of California's Unclaimed Property Law nor the United States Constitution, Amendments Fifth and Fourteenth.

In 2005, the Ninth Circuit declined to follow both of the 2004 decisions in the *Fong* and *Harris* cases. *See Taylor,* 402 F.3d at 930 n. 22. The Ninth Circuit held that this "new approach to escheat," as described in this action, is unconstitutional. In 2007, the Ninth Circuit issued a federal injunction that shuttered California's Unclaimed Property program. *Taylor*, 488 F.3d 1197; *Taylor*, 2007 WL 1628050.

These California state court cases and the other decisions cited by Defendant, ECF No. 56-4 at 27-28, also conflict squarely with the numerous decisions by other federal courts of appeal and divisions in other states, some of which are cited below.[4] To the extent that the Administrator's argument is not grounded in the Constitution, it should be rejected by this Court.

## 2. The Administrator's Actions do Not Comply With New Jersey's Unclaimed Property Law That Mandates Notices And Due Process.

The points raised in the final section of the Motion, ECF No. 56-4 at 31-38, require additional scrutiny. The Supreme Court has long expressed constitutional

---

[4] *See e.g.*, *Garcia-Rubiera v. Fortuno*, 665 F.3d 261 (1st Cir. 2011); *Luessenhop v. Clinton Cnty., New York*, 466 F.3d 259 (2d Cir. 2006); *Perez-Alevante v. Gonzales*, 197 Fed. App'x 191 (3d Cir. 2006).

"concern with governmental self-interest" when "the State's self-interest is at stake.'" *United States v. Winstar Corp.*, 518 U.S. 839, 896 (1996) (quoting *United States Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26 (1977)). In *Winstar*, the Supreme Court spoke of the "taint" of "a governmental object of self-relief" where the government is party to a contract. *Id.*; *see also Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 412-13 & n.14 (1983) (holding that a stricter level of scrutiny applies under the Contract Clause when a state alters its own contractual obligations).

In *Mullane*, 339 U.S. 306, even when the exacerbating feature of fiscal self-interest was absent, the Supreme Court held that notice by newspaper publication was insufficient with respect to known present beneficiaries of a trust and did not satisfy due process: "The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Id.* at 315.

The results of this fatally flawed system speak for themselves. The underlying statutory purpose of the unclaimed property statutory scheme is to protect private rights by locating and returning private property to "unknown" owners, and not to declare "known" citizens to be "unknown" simply for purposes of seizing their property for use by the State as a "revenue stream." Defendant's procedures have hardly produced "notice reasonably calculated, under all the circumstances, to

apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 313.  Indeed, the opposite is true.

Similarly, in *Mennonite Bd. of Missions,* 462 U.S. 791, the Supreme Court held that when the identity and location of a mortgagee can be obtained through examination of public records, "constructive notice alone does not satisfy the mandate of *Mullane*." *Id.* at 798.  Moreover, a "party's ability to take steps to safeguard its interests does not relieve the State of its constitutional obligation." *Id.* at 799.  Although a party required to provide notice need not "undertake extraordinary efforts to discover ... whereabouts ... not in the public record," it must use "reasonably diligent efforts to discover addresses that are reasonably ascertainable." *Id.* at 798.

In *Perez-Alevante*, 197 Fed. App'x 191, the Third Circuit held that notice was insufficient under the reasoning of *Jones v. Flowers* in connection with the affirmance by the Board of Immigration Appeals of the denial of a motion to reopen in absentia removal proceedings for a lawful permanent U.S. resident:  "Considering that 'the constitutionality of a particular procedure for notice is assessed ex ante,' [citing *Jones v. Flowers*], we have no difficulty in finding that the additional step of providing notice to *Perez–Alevante's* counsel, where the immigration court knew he was represented by counsel and was in possession of that counsel's contact information, was required by the Due Process Clause."  197 Fed. Appx. at 196.

Defendant asserts that the searchable website is not "broken" or "unsearchable," ECF No. 56-4 at 34-35, yet offers no evidence to support this conclusion. Instead, the Administrator offers amounts that were returned to the public in the fiscal years of 2020 and 2021. The Administrator fails to provide the total amounts that were seized during those same years. Therefore, this Court has no basis for comparison. The Administrator, likewise, does not tell the Court how much of the funds under $100 are returned to the property owners. In the State of California, for example, amounts under $50 make up over 50% of $11.9 billion Unclaimed Property Fund.[5]

---

[5] Taylor, Mac, "Unclaimed Property: Rethinking the State's Lost & Found Program, Legislative Analyst's Office (LAO)" (February 10, 2015) at pp. 16-17 found at: http://www.lao.ca.gov/reports/2015/finance/Unclaimed-Property/unclaimed-property-021015.pdf.

## **CONCLUSION**

Based on the undisputed material facts, when applied to the law, Plaintiff should prevail on his First Claim Relief for violations of the Due Process Clause (Fourteenth Amendment) and Second Claim for Relief for violations of the Takings Clause (Fifth Amendment).  This Court should deny Defendant's Motion.

Respectfully Submitted,

PALMER LAW GROUP, a PLC


By: /s/ William W. Palmer
　　　WILLIAM W. PALMER, ESQ.
　　　(*Pro Hac Vice Counsel*)
2443 Fair Oaks Boulevard, No. 545
Sacramento, CA 95825
Telephone: (916) 972-0761
Facsimile:  (916) 972-0877
Email: wpalmer@palmercorp.com

WILENTZ, GOLDMAN & SPITZER, P.A.


By: /s/ Kevin P. Roddy
　　　KEVIN P. RODDY, ESQ.

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
Facsimile:   (732) 726-6686
Email: kroddy@wilentz.com

Attorneys for Plaintiff Lisa Salvato

DATED: October 5, 2023

## CERTIFICATE OF SERVICE

I hereby certify that a true and copy of **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF RIPENESS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6) AND FOR SUMMARY JUDGMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 56 AND LOCAL CIVIL RULE 56.1 AS TO ALL COUNTS OF THE FIRST AMENDED COMPLAINT** was made on the below counsel of record via electronic mail by service of ECF:

Andrew J. Bruck
Acting Attorney General of New Jersey
Jonathan B. Peitz
Deputy Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 106
Trenton, NJ 08625

DATED: October 5, 2023

WILENTZ, GOLDMAN & SPITZER, P.A.

By: /s/ Kevin P. Roddy
        KEVIN P. RODDY, ESQ.

90 Woodbridge Center Drive, Suite 900
Woodbridge, NJ  07095
Telephone:  (732) 636-8000
Facsimile:   (732) 726-6686
Email: kroddy@wilentz.com
Attorneys for Plaintiff Lisa Salvato

39