**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **LISA SALVATO,** *on behalf of herself and other persons similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>**STEVEN HARRIS,** *in his official capacity as Administrator of the State of New Jersey*,<br><br>Defendant. | Civil Action No. 21-12706 (ZNQ) (DEA)<br><br><br>**OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court upon the combined Motion to Dismiss for Lack of Ripeness Pursuant to Fed. R. Civ. P. 12(b)(1) and for Summary Judgment Pursuant to Fed. R. Civ. P. 56 and L. Civ. R. 56.1 on all Counts of the First Amended Complaint (the "Motion," ECF No. 56) filed by Defendant Steven Harris ("Defendant") in his official capacity as Administrator of the New Jersey Unclaimed Property Administration ("UPA"). In support of the Motion, Defendant filed a brief ("Moving Br.," ECF No. 56-4). Plaintiff Lisa Salvato ("Plaintiff") filed an opposition ("Opp'n Br.," ECF No. 70), to which Defendant replied ("Reply," ECF No. 78). Defendant submitted a Statement of Undisputed Material Facts ("SUMF," ECF No. 56-1), to which Plaintiff responded in opposition ("Responsive Statement of Material Facts" or "RSMF," ECF No. 67). After careful consideration of the parties' submissions, the Court decides the Motion without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1]  For the

---

[1] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

reasons outlined below, the Court will GRANT Defendants' Motion to Dismiss and for Summary Judgment.

I.      **BACKGROUND**

  A.      **Factual Background**

The Court gleans the following facts from both Defendant's SUMF (ECF No. 56-1) and Plaintiff's RSMF (ECF No. 67).[2]

On December 28, 2001, Plaintiff and her mother Viola Salvato ("Viola") purchased 200 shares of Boston Life Sciences, Inc. ("BLSI") stock as joint tenants with a right of survivorship.[3] (SUMF ¶ 1; RSMF ¶ 3.)[4]  Following a 1-for-5 reverse stock split that occurred on February 4, 2005, Plaintiff received 40 shares of BLSI stock in exchange for her original 200.  (SUMF ¶¶ 3–4; RSMF ¶¶ 5–6.)  On June 11, 2007, BLSI changed its name to Alseres Pharmaceuticals, Inc. ("Alseres" or "ALSE"), entitling BLSI stockholders to receive ALSE stock upon tender of their BLSI stock certificates.  (SUMF ¶¶ 5, 8; RSMF ¶¶ 7, 10.)  Continental Stock Transfer and Trust Company ("Continental"), the stock transfer agent for Alseres, sent correspondence to Plaintiff's address of record at the time—115 Rainbow Dr. in Bricktown, NJ—to notify her of this change.  (SUMF ¶¶ 7–8; RSMF ¶¶ 9–10.)  However, Plaintiff did not tender her stock certificates to Alseres.

---

[2] The Court construes as undisputed all facts in the SUMF to which Plaintiff responds that she "lacks sufficient information to form a belief as to the[ir] truth" and facts which Plaintiff deems "disputed" but without citation to any evidence of record.  L. Civ. R. 56.1 ("The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion."); *see also VIP Couture, Inc. v. C.H. Robinson Int'l, Inc.*, Civ. No. 16-3596, 2018 WL 259947, at *2 nn.2, 3 (D.N.J. Jan. 2, 2018) (treating as undisputed factual statements to which the opposing party responded "denied" with either no further explanation, an explanation that failed to address the substance of the factual statement, or merely an accompanying "bare assertion" that did "not support its response with any citation to the record").

[3] Plaintiff alleges that she transferred the stock "solely into her name" upon Viola's death in 2002.  (FAC ¶ 18; SUMF ¶ 1 n.1.)  The Court will hereinafter refer to the stock as Plaintiff's stock.

[4] For reasons unclear, the numbering scheme for the paragraphs of the Responsive Statement of Material Facts supplied by Plaintiff does not align with the Statement of Uncontested Material Facts provided by Defendant.  The Court cites to the paragraph of the RSMF it believes is responsive.

(SUMF ¶ 10; RSMF ¶ 8.)  Alseres then reported to the UPA that Plaintiff's stock was subject to escheat under N.J.S.A. 46:30B-1 to -109.  (SUMF ¶ 11; RSMF ¶ 13.)  Accordingly, Continental transferred Plaintiff's stock, along with numerous other unclaimed shares of ALSE stock, to the UPA on May 19, 2010 with a market value of $0.21 per share.[5]  (SUMF ¶¶ 12–13; RSMF ¶¶ 14–15.)  The UPA sold those shares of unclaimed ALSE stock, including Plaintiff's 40 shares, on February 5, 2013 at a price of $0.06 per share.  (SUMF ¶ 16; RSMF ¶ 18.)  As a result, the UPA held $2.40 in sale proceeds "for the benefit of Salvato."[6]  (SUMF ¶ 17; RSMF ¶ 19.)  The UPA did not publish any notice thereof.  (SUMF ¶ 18; RSMF ¶ 20.)

On August 12, 2015, Plaintiff submitted a claim inquiry form to the UPA.  (SUMF ¶ 21; RSMF ¶ 23.)  In response, the UPA erroneously (and admittedly) issued an "NF1" letter informing Plaintiff that it did not have any of her property.[7]  (SUMF ¶¶ 22–23; RSMF ¶¶ 24–25.)  On July 16, 2019, Continental emailed the UPA to inquire if it had received, and was still in possession of, the ALSE stock that it had received in 2010, which included Plaintiff's 40 shares.  (SUMF ¶¶ 12, 24; RSMF ¶ 14, 26.)  The UPA acknowledged that it had received and subsequently sold Plaintiff's stock for the sum of $2.40.  (SUMF ¶ 25; RSMF ¶ 27.)  The UPA then opened a claim on Plaintiff's behalf, but Plaintiff never followed through with the UPA's claim process or provided the UPA with her current address.  (SUMF ¶¶ 26–28; RSMF ¶¶ 28–30.)

---

[5] The total value of Plaintiff's 40 shares was $8.40 at the time of UPA's receipt.  (SUMF ¶ 15; RSMF ¶ 17.)

[6] The FAC alleges that the value of ALSE stock on the day that the UPA sold her shares "fluctuated between $300 to $500 per share," and that the UPA therefore "received a high of $20,000 or a low of $12,000" from the sale, (FAC ¶ 21), but it is undisputed that "there is no evidence that the UPA actually received more than $2.40 when liquidating [Plaintiff's] stock."  (SUMF ¶ 31; RSMF ¶ 33.)

[7] The FAC alleges that Defendant "repeatedly denied that the [UPA] had the Plaintiff's property."  (FAC ¶ 17.) However, there is no evidence in the record of any further denials of the UPA's possession of Plaintiff's property beyond the erroneous issuance of this single letter.  (*See generally* SUMF, RSMF (responses not accompanied by references to evidence in the record), Opp'n Br. (containing neither exhibits nor a supplemental statement of disputed material facts).)

####### B.      Procedural Background[8]

Plaintiff filed a class action Complaint against the Defendant on June 17, 2021, alleging

violations of Plaintiff's constitutional rights under the Due Process clause of the Fourteenth

Amendment ("First Claim for Relief," Compl. ¶¶ 44–49 (hereinafter, "Count I")) and the Takings

Clause of the Fifth Amendment ("Second Claim for Relief," *id.* ¶¶ 50–55 (hereinafter, "Count

II")).  Defendant filed a Motion to Dismiss the Complaint on September 27, 2021, (ECF No. 12),

which this Court granted in part and denied in part on April 26, 2022.  (ECF No. 24.)  Dismissing

Count II without prejudice, the Court concluded that Plaintiff's Takings Clause claim was not

ripe.  (*Id.* at 21–23.)  With respect to Count I, the Court denied Defendant's Motion to Dismiss

because lingering factual issues regarding the statute's notice requirements—specifically, "the

final sale price" of Plaintiff's stock, "the date the property was escheated, and the value at the

time of seizure of the State"—precluded the Court from determining whether the Complaint

alleged a plausible Due Process violation.  (*Id.* at 17–18.)  The Court ordered expedited discovery

to uncover those pertinent facts, stating: "[i]f the facts demonstrate a minimal value of the

property, i.e., less than $100.00 as set forth in the statute, Defendant may move for summary

judgment on [the Due Process] issue."  (*Id.* at 18–19.)

On June 10, 2022, Plaintiff filed an Amended Complaint (the "First Amended Complaint"

or "FAC," ECF No. 31).  On July 8, 2022, Defendant filed a Motion to Strike the FAC.  (ECF No.

34.)  The Court granted in part and denied in part the Motion to Strike on October 25, 2022,

refusing to strike the FAC in its entirety but striking paragraphs 40 and 41, which consisted of

legal argument, as well as all references to Christine Kydd, who was improperly added as a

plaintiff.  (ECF No. 46.)  Plaintiff then filed a Motion for Reconsideration of that decision on

---

[8] The parties are familiar with the procedural background of this matter.  Accordingly, the Court will limit its recital
to the relevant history.  For a full recitation of the procedural background the Court refers the parties to its April 26,
2022 and July 13, 2023 Opinions (ECF Nos. 24 and 60, respectively).

November 4, 2022, (ECF No. 47), which this Court denied on July 13, 2023.  (ECF Nos. 60, 61.)

The Court again concluded that Plaintiff's Takings Clause claim was not ripe[9] because the

Complaint "lack[ed] any allegation that Defendant arrived at a definitive position on the issue [as

to the escheated property] to inflict an actual, concrete injury."  (ECF No. 60 (internal quotation

marks omitted).)

Currently before the Court is a combined Motion to Dismiss the FAC and for Summary

Judgment that Defendant filed on May 12, 2023.  (ECF No. 56.)

## II.     JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 based

on the claims alleged in the FAC.

## III.    LEGAL STANDARDS

### A.     Rule 12(b)(1)

Under Article III of the United States Constitution, federal courts have subject matter

jurisdiction only over matters involving "cases" or "controversies."  U.S. Const. art. III, § 2.

"Courts enforce the case-or-controversy requirement through several justiciability doctrines that

'cluster about Article III,'" including the doctrines of ripeness and mootness.  *Toll Bros., Inc. v.*

*Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009) (quoting *Allen v. Wright*, 468 U.S. 737, 750

(1984) (rev'd on other grounds)) (internal quotation marks omitted).  "The ripeness doctrine serves

to 'determine whether a party has brought an action prematurely and counsels abstention until such

time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements

of the doctrine.'"  *Khodara Env't, Inc. v. Blakey*, 376 F.3d 187, 196 (3d Cir. 2004) (quoting

*Peachlum v. City of York*, 333 F.3d 429, 433 (3d Cir. 2003)).

---

[9] The Court revisited the ripeness issue because it had to decide, upon addressing a prior legal error that the Court made in its decision addressing Defendant's first Motion to Dismiss, whether the prior error would "alter the disposition of th[e] matter."  (ECF No. 60 at 4.)  The Court held that it did not because of the claim's lack of ripeness. (*Id.* at 6.)

If a court determines that it lacks subject matter jurisdiction over a matter, the matter must be dismissed. *See* Fed. R. Civ. P. 12(h)(3). "A challenge to subject matter jurisdiction under Rule 12(b)(1) may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and it requires the court to consider the allegations of the complaint as true," while a factual attack, on the other hand, "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or otherwise present[ing] competing facts." *Id.* (internal quotation marks omitted). When a defendant raises a factual challenge to jurisdiction, a district court can weigh and consider evidence outside the pleadings, with no presumptive truthfulness attaching to the plaintiff's allegations, and the plaintiff bears the burden of establishing jurisdiction. *Id.*; *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176–78 (3d Cir. 2000).

The Third Circuit has "repeatedly cautioned against allowing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction to be turned into an attack on the merits." *Davis*, 824 F.3d at 348–49 (citing cases). "[D]ismissal for lack of jurisdiction is not appropriate merely because the legal theory alleged is probably false, but only because the right claimed is 'so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy.'" *Id.* at 350 (quoting *Kulick v. Pocono Downs Racing Ass'n*, 816 F.2d 895, 899 (3d Cir. 1987)). "[W]hen a case raises a disputed factual issue that goes both to the merits and jurisdiction, district courts must 'demand less in the way of jurisdictional proof than would be appropriate at a trial stage.'" *Id.* (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 892 (3d Cir. 1977)).

**B.      Rule 56**

Rule 56 provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine dispute of material fact remains. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met that threshold burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must present actual evidence that creates a genuine dispute as to a material fact for trial. *Anderson*, 477 U.S. at 248; *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine disputes of material fact exist). "[U]nsupported allegations in . . . pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorp.*, 912 F.2d 654, 657 (3d Cir. 1990). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine [dispute] of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case

necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 n.5 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter but to determine whether there is a genuine dispute for trial. *Anderson*, 477 U.S. at 248–49. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson*, 477 U.S. at 254.

## IV.   **DISCUSSION**

### A.   **Subject Matter Jurisdiction**

Count II of the FAC asserts a violation of Plaintiff's Fifth Amendment rights under the Takings Clause of the U.S. Constitution.[10]  (FAC ¶¶ 56–61.)  Defendant argues that the claim is not ripe and seeks dismissal of that claim for lack of subject matter jurisdiction.  (Moving Br. at 10–15.)

There is no legal requirement that a plaintiff alleging a Fifth Amendment Takings Clause violation must exhaust the defendant's administrative claim process. *See Pakdel v. City & Cnty of San Francisco*, 141 S. Ct. 2226, 2228 (2021); *see also Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019).  Nonetheless, "a federal court should not consider the claim before the government has reached a 'final' decision." *Pakdel*, 141 S. Ct. at 2228.  In other words, for a Takings Clause claim to be ripe, a plaintiff must show that the state reached a final decision regarding the plaintiff's property. *Id.* at 2231 (declaring the finality requirement to be "relatively modest," but still

---

[10] Although not itself directly binding on the States, the Takings Clause of the Fifth Amendment is nevertheless made applicable to them through the Fourteenth Amendment. *See Lingle v. Chevron U.S.A., Inc.*, 544 U.S. 528, 536 (2005) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)).

requiring that the government have adopted a final position for claim to be ripe).  The finality requirement "is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury."  *Rachlin v. Baumann*, Civ. No. 21-15343, 2022 WL 4239790, at *10 (D.N.J. Feb. 22, 2022) (emphasis and internal quotation marks omitted).

Here, Defendant argues that Plaintiff "cannot satisfy the finality requirement because the UPA has made no final or adverse decision" on Plaintiff's claim due to Plaintiff's own failure to cooperate with the UPA's claim process.  (Moving Br. at 13–14.)  Defendant argues that although Plaintiff did submit a claim to the UPA regarding her ALSE stock on August 12, 2015, which was erroneously handled by the UPA at the time, she ultimately failed to complete the claim process after UPA discovered the error and, in response, opened a new claim on Plaintiff's behalf.  (*Id.*)  Defendant contends that Plaintiff admits that the UPA called her to both inform her that it held $2.40 (described as "about $3.00") in proceeds from the sale of her ALSE stock, and to inquire about her current address where it could send the money.  (*Id.* at 15 (citing FAC ¶ 22).)  Defendant points out that Plaintiff did not respond and that to this day the UPA holds $2.40 that she may claim, plus interest.  (*Id.* at 14.)  Lastly, Defendant argues that the FAC contains the same ripeness deficiencies from the Complaint that this Court pointed out in its July 13, 2023 Opinion, because "the FAC contains no new allegations regarding the UPA determining a claim filed by [Plaintiff]." (Reply Br. at 8.)

Plaintiff argues that this Court has federal question jurisdiction over her claims because the FAC alleges constitutional violations.  (Opp'n Br. at 16.)  On the issue of ripeness in particular,[11]

---

[11] Plaintiff makes several arguments regarding the merits of the case that are irrelevant to the issue of subject matter jurisdiction.  (Opp'n Br. at 17 (a "new form of escheatment" followed by Defendant "and certain . . . other states" fails to comply with notice and due process requirements), 18–19 (states may have competing tests for escheat, and seizure of property is unconstitutional regardless of notice to property owners), 19–20 (Defendant "misappli[ed]" the UPA and unlawfully engaged in an "[u]nnoticed [s]tock [t]ransfer of Plaintiff's [s]hares").)

Plaintiff acknowledges this Court's prior finding that her claims were not ripe, and argues: "Plaintiff filed this action on behalf of a Class of injured citizens, some of whom admittedly received no notice. In order to cure this problem, Plaintiff will seek injunctive relief compelling Defendant to convey constitutional notice to the injured property owners." (*Id.* at 17.)

Here, the Court again finds that Count II of the FAC is not ripe because there has been no final determination by the UPA with respect to Plaintiff's property claim.[12]  Plaintiff initiated the UPA's claim process in 2015; the UPA did not outright deny the claim, but did erroneously advise Plaintiff in response that it held none of her property.  (SUMF ¶¶ 21–23; RSMF ¶¶ 23–25.) However, the UPA attempted to remit the $2.40 to Plaintiff that it held on her behalf upon discovering the error by contacting Plaintiff to inform her that it opened a new claim on her behalf, and Plaintiff did nothing to follow through with claiming her money by either continuing to pursue the new claim that the UPA had opened for her or by following up on her initial claim from 2015. (SUMF ¶¶ 26–28; RSMF ¶¶ 28–30.)  For these reasons, the FAC contains the same ripeness deficiencies found by this Court in its July 13, 2023 Opinion—the FAC does not allege any new facts to suggest there was since been any finality to Plaintiff's property claim.  (*See generally* FAC.)  To the contrary, it appears that Plaintiff to this day has the ability to pursue her claim with the UPA and retrieve the money that it holds on her behalf, which it received following the liquidation of her ALSE stock.

Accordingly, the Court will dismiss Count II without prejudice for lack of subject matter jurisdiction, and does not reach Defendant's alternative argument for summary judgment as to Count II.

---

[12] Given that Defendant has raised a factual attack on this Court's jurisdiction by "present[ing] competing facts," the Court weighs and considers evidence outside the pleadings, with no presumptive truthfulness attaching to the plaintiff's allegations.  *Davis*, 824 F.3d at 346.

**B.      Summary Judgment**

Defendant also seeks summary judgment as to Count I of the FAC, Plaintiff's Due Process claim.

To prevail on "a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide due process of law." *Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006) (internal quotation marks and citation omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 205 (3d Cir. 2007). Property interests are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law, rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). The state law involved in this case is the New Jersey Uniform Disposition of Unclaimed Property Act (the "Act"). Notice is required under the Act before the UPA can seize property that it deems abandoned when, among other requirements, "[t]he property has a value of $50.00 or more." N.J.S.A. 46:30B-50. Another section of the Act lays out public notice requirements, but with the notable exception that "[t]he administrator is not required to advertise the name and address or location of an owner of property having a total value of less than $100." N.J.S.A. 46:30B-51.

As a preliminary matter, the Court pauses to address a dispute between the parties that is central to Plaintiff's Due Process claim: the value of Plaintiff's ALSE stock.[13] As the Court already noted above, Plaintiff failed to properly dispute various uncontested material facts asserted by Defendant. This includes the value of her ALSE stock in 2010 and 2013. In his Motion, Defendant asserts values of $0.21/share and $0.06/share, respectively, and the Court accepts those

---

[13] The total value of the stock determines the level of notice that the UPA must provide before escheating property.

11

values as undisputed.  Even if the Court were inclined to ignore Plaintiff's procedural error, it would reach the same conclusion upon consideration of the parties' submissions.  In her opposition brief, Plaintiff regularly insists that the total value of her 40 shares was $38,000 in 2010 and $12,000–$20,000 in 2013.  (*See, e.g.*, Opp'n Br. at 2.)  She appears to have arrived at this conclusion based in part on her own online searching for the ALSE stock value on the relevant dates, together with a series of emails she received from employees of Continental.  (Plaintiff's October 2, 2023 Declaration submitted in support of her opposition, ECF No. 68; Emails attached as Exhibit M to Defendant's Motion, ECF No. 56-2.)  In Defendant's briefing, he explains that the high share price adopted by Plaintiff is the product of attempting to look back at the share value in 2010 and 2013 after a 5000:1 reverse stock split in 2014.  (Moving Br. at 21–23).  Defendant supports his explanation with an affidavit from Shoaib Khan, Director of the Division of Investment of the New Jersey Department of the Treasury.  (ECF No. 56-3.)  Importantly, Defendant's position on pricing is corroborated by contemporaneous evidence he submitted in the form of Alseres's own 2013 Form 10K filing with the SEC.  (2013 10K at 8, Exhibit P to Defendants' Motion.)  Therein, Alseres reported that the closing prices of its own stock for the relevant first quarter of 2013 reached a low of $0.02/share and a high of $0.14/share.  (2013 10K at 8.)  The Court therefore finds this a further basis to credit Defendant's valuation of Plaintiff's ALSE stock.

Turning back to the Motion's challenge to Count II, Defendant argues that Plaintiff "was provided all of the process to which she was due under the Act" because Plaintiff's stock at all relevant times was worth less than $50.00, and certainly less than $100.00—both on the date the stock was remitted to the UPA ($8.40 total) and on the date that the UPA subsequently sold the stock ($2.40 total).  (Moving Br. at 25, 28, 32.)  Defendant further argues, *inter alia*, that even if

the UPA's statutory compliance in Plaintiff's particular case[14] was somehow insufficient to constitute due process, a balance of the interests at stake as required by Third Circuit law favors summary judgment in favor of Defendant, as 1) Plaintiff's private interest—$2.40—is "exceedingly small"; 2) "there is no substantial risk of erroneous deprivation in this case" because discovery has produced evidence that the UPA did in fact mail Plaintiff notice that her stock was subject to remittance under the Act at her address of record; and 3) there is a "substantial public interest in abandoned property." (*Id.* at 29–31.)

Defendant emphasizes that Plaintiff has not produced any evidence "supporting her allegations that she transferred the ALSE stock from joint ownership with her late mother to her individual name or that Alseres or Continental was aware of her current address," (*id.* at 28); supporting her allegation that she "received investor e-mail messages from Continental as late as May 28, 2021," (*id.*); showing Defendant's noncompliance with any section of the Act (Reply Br. at 11–12); or refuting that "Continental provided written notice to her, at her address of record, that her ALSE stock was subject to remittance to the UPA" (and in fact, discovery affirmatively showed those facts to be true). (*Id.* at 30.)

Plaintiff's argument against summary judgment relies primarily on Ninth Circuit law (often interpreting California state unclaimed property law), and does not cite to evidence in the record. First, Plaintiff argues that the notice mechanisms provided by the Act at large are unconstitutional[15] because under its provisions, "no notice of any kind is created and conveyed to property owners." (Opp'n Br. at 24–27 ("This case demonstrates that New Jersey's meager attempts at notice under the UPA statutory scheme have predictably failed.").) Plaintiff

---

[14] Plaintiff has made clear, and this Court has accepted, that she is not challenging the constitutionality at large of the Act, but rather how Defendant applied the Act when handling her specific property. (*See* ECF No. 24 at 4 (citing Plaintiff's prior court papers).)

[15] This argument conflicts with Plaintiff's prior assertions that she is not challenging the constitutionality of the Act, but rather its application to the Plaintiff's situation. (ECF No. 42 at 5; FAC ¶ 6.)

additionally argues that she received no direct mail notice, no publication notice, and no website notice prior to the UPA taking her stock. (*Id.* at 27–30.) Lastly, Plaintiff argues that she states a "[c]ognizable [c]laim" for relief, and therefore that she "should be afforded the opportunity to prove the allegations."[16] (*Id.* at 31.)

Here, the Court's summary judgment analysis centers on the value of Plaintiff's 40 shares of ALSE stock at all times relevant to the UPA's seizure and sale of those shares pursuant to the Act. This Court previously contemplated a motion for summary judgment by Defendant on the issue of due process should discovery reveal that Plaintiff's stock was indeed below the minimum amount required for statutory notice. (ECF No. 24 at 19.) It is now undisputed that Plaintiff's 40 shares of ALSE stock were worth $8.40 when seized by the UPA, and $2.40 when subsequently sold by the UPA. (SUMF ¶¶ 15–17; RSMF ¶¶ 17–19.) As such, the Court finds that Defendant complied with the procedural due process requirements of the Act. *See* N.J.S.A. 46:30B-50, -51. The Court further finds that, under these circumstances, a balance of the interests requires a conclusion that Plaintiff's due process rights were not violated by Defendant when the UPA took and sold her property; Plaintiff's interest in $2.40 is small compared to the state's large public interest in subjecting abandoned property to escheat, and the Act has pre-remittance notice requirements that were met by Defendant when it mailed Plaintiff notice at her address of record that her stock was subject to remittance before effectuating that remittance, leaving "no substantial risk of erroneous deprivation in this case." (Moving Br. at 30.)

The Court finds that there is no genuine dispute as to any material fact for Count I and that Defendant is entitled to judgment as a matter of law. The Court will therefore grant summary judgment for Defendant as to Count I of the FAC.

---

[16] The standard articulated by Plaintiff in this portion of her brief is the standard for withstanding a Rule 12(b)(6) motion to dismiss, not a motion for summary judgment. Indeed, the Supreme Court case cited by Plaintiff in support of this point does not apply the summary judgment standard or consider any motion for summary judgment.

## V.      **CONCLUSION**

For the reasons outlined above, Defendant's Motion to Dismiss and for Summary Judgment will be GRANTED.  Summary judgment will be GRANTED for Defendant with respect to Count I of the FAC, and Count II of the FAC will be DISMISSED without prejudice for lack of subject matter jurisdiction.  Plaintiff will be given leave to file an amended complaint, limited to those amendments to Count I that address the deficiencies identified herein, within 30 days.[17]  An appropriate Order will follow.

Date: December 18, 2023

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**

---

[17] For clarity, the Court notes that leave is in particular NOT granted for Plaintiff to amend her complaint to add new plaintiffs and/or to add a facial challenge to the New Jersey Uniform Disposition of Unclaimed Property Act, as she proposes in her opposition brief (Opp. Br. at 6–7).  Any such leave must be sought by way of motion directed to the Magistrate Judge.